COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued at Richmond, Virginia


TIMOTHY JAMES TRATZINSKI
                                        MEMORANDUM OPINION[*] BY
v.    Record No. 0419-02-2           JUDGE JAMES W. BENTON, JR.
                                            MARCH 25, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Learned D. Barry, Judge

            John A. March, Jr., Assistant Public Defender
            (Craig W. Stallard, Assistant Public
            Defender, on briefs), for appellant.

            Paul C. Galanides, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     A trial judge convicted Timothy James Tratzinski of second

degree murder.  Tratzinski contends the evidence was insufficient

to support the conviction because malice was not proved and

because he proved self-defense.  We affirm the conviction.

                              I.

     The evidence proved that Timothy James Tratzinski and Julius

Smith were co-tenants in a house.  Smith testified that he was in

his bedroom on the main floor of the house at 11:30 p.m. watching

television when he heard a "crashing" sound.  He opened his

bedroom door and listened.  Hearing nothing more, he closed his

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

door and continued watching television.  Ten minutes later, he heard several "thumping" sounds and went to the bathroom.  While there, he heard the front door open.  When he left the bathroom, he noticed the front door was ajar, he closed it, and he went to bed.  The next morning, Smith saw drops of blood in the bathroom and reported this discovery to his lessor.  Smith testified he had never been in the basement where Tratzinski's bedroom is located.

The City of Richmond Police went to the house in response to a call from the lessor.  They discovered blood in Tratzinski's basement bedroom, blood on the patio carpet and couch outside Tratzinski's bedroom, and blood in other areas.  A trained dog led the police from the patio, through woods behind the house, and to an automobile repair shop.  Behind the shop, police discovered the nude body of Jermaray Johnson in a trash can.

Later that morning, a police officer saw Tratzinski at a convenience store across from the house.  Tratzinski had blood on his pants, shoes, and hands.  After Tratzinski accompanied the officer to the house, Tratzinski told the officer he met Johnson in the convenience store the previous night.  He did not know Johnson before this meeting.  He said he "beat [Johnson] in the head with something" after Johnson attacked him with a hammer. Tratzinski said he did not know what he used to hit Johnson.

The pathologist who performed an autopsy identified five skull fractures on the back of Johnson's head, nine blunt lacerations on the right side of his head, and eight blunt

-

lacerations on the left side of his head.  Numerous superficial contusions and abrasions were on Johnson's face.  The front of Johnson's neck had been torn apart.  The pathologist testified that he saw no defensive injuries on Johnson's body.

The testimony and exhibits proved the blood on Tratzinski's clothing was Johnson's.  A mixture of Tratzinski's blood and Johnson's blood was found outside the house.  DNA analysis established that the blood of two distinct large stain patterns on the patio carpet came from Johnson.  An analyst testified that one large stain was produced when Johnson's blood had drained and pooled; the other stain reflected a pooling of blood and also a splattering of blood that radiated from Johnson's body as a result of force.  Smaller blood stains on the carpet inside the basement door contained both Johnson's and Tratzinski's blood.  Johnson's blood also was on a couch where a bag of cocaine was found.  Some neatly folded clothing was next to Tratzinski's bed.

Tratzinski's blood was found on the stairs leading to the first floor, on the front entrance porch, and at various places on the first floor.  In one of the attic bedrooms, the police found under a mattress a cocaine pipe wrapped in a towel.  Tratzinski's blood was on the towel and in various locations in the attic. None of the blood on the first floor level or bedrooms came from Johnson.

At the conclusion of the Commonwealth's evidence, Tratzinski testified he had been "drinking a lot" of alcohol the day he met

-

Johnson in a chance encounter.  He and Johnson established through their conversation that they were interested in a sexual encounter with each other and walked to Tratzinski's house.  In Tratzinski's bedroom, Johnson removed his clothes.  Tratzinski fondled Johnson, kissed his body, and then informed Johnson he needed a condom because he was HIV positive.  Tratzinski testified that Johnson became upset and loudly accused Tratzinski of wanting to infect him.  He testified Johnson obtained a hammer that was among other tools in the basement, swung at him, and threatened to kill him.

According to Tratzinski, he tried to escape through the patio door after Johnson struck him on his hand and shoulder with the hammer.  Because he was slow and too intoxicated to go farther, he began "tussling" with Johnson.  During the struggle, Tratzinski seized the hammer from Johnson and began swinging the hammer.  Tratzinski testified that the struggle lasted five or six minutes and that he could not remember anything after the struggle.  He said he awoke the next morning in the woods and did not know why he was there or why he was bruised and covered with blood.  Tratzinski testified he did not know how Johnson's body got into the trash can and did not know what he did with the hammer.

At the conclusion of all the evidence, the trial judge ruled that the evidence was insufficient to prove first degree murder and did not prove voluntary manslaughter.  He convicted Tratzinski of second degree murder.

-

II.

Tratzinski contends the evidence was insufficient to prove malice because it did not negate heat of passion. The Commonwealth argues the evidence proved malice beyond a reasonable doubt.

"Second degree murder is defined as a 'malicious killing' of another person." Lynn v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998) (citation omitted).

> Malice inheres in the intentional doing of a wrongful act without legal justification or excuse. Malice is not confined to ill will, but includes any action flowing from a wicked or corrupt motive, done with an evil mind or wrongful intention, where the act has been attended with such circumstances as to carry in it the plain indication of a heart deliberately bent on mischief. Malice is implied from any willful, deliberate and cruel act against another.

Williams v. Commonwealth, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991).

"Malice . . . is the element that distinguishes [murder] from manslaughter." Moxley v. Commonwealth, 195 Va. 151, 157, 77 S.E.2d 389, 393 (1953). That distinction is explained as follows:

> Every malicious homicide is murder. Manslaughter, on the other hand, is the unlawful killing of another without malice. To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation.

-

Heat of passion is determined by the nature and degree of the provocation, and may be founded upon rage, fear, or a combination of both. Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice.

A plea of self-defense and a claim of provoked heat of passion do not conflict with each other.

Generally, whether a killing was done in the heat of passion upon reasonable provocation is a jury question. "Only when the trial court, giving the defendant the benefit of every reasonable inference from the evidence, can say that the minds of reasonable men could not differ does the question become [one] of law."

Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192-93 (1986) (citations omitted).

Viewed in the light most favorable to the Commonwealth, Harward v. Commonwealth, 5 Va. App. 468, 479, 364 S.E.2d 511, 516 (1988), the evidence proved Tratzinski struck the back of Johnson's head five times with an object, causing "impressed skull fractures." He struck the sides of Johnson's head seventeen times and struck Johnson's neck so many times that the pathologist could not quantify the number of wounds. The blows to the neck damaged Johnson's arteries and transected his trachea, muscles, thyroid, and cartilage. The brutal and vicious nature of the killing is evidence from which the trial judge could have inferred malice. See Near v. Commonwealth, 202 Va. 20, 32, 116 S.E.2d 85, 93 (1960) (holding that a killing

-

caused by vicious blows that caused "a gouge" in the throat was unjustified by the claimed provocation and was not evidence of sudden killing in the heat of passion).

The evidence also proved Tratzinski used an instrument to kill Johnson.  The instrument, which he said was a hammer, was last held by Tratzinski and never found.  "'"A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character. . . .".'" Quintana v. Commonwealth, 224 Va. 127, 140, 295 S.E.2d 643, 649 (1982) (citations omitted).  In view of the manner in which Tratzinski used the instrument to kill Johnson, the judge was entitled to find that it was a deadly weapon.  See id. (holding that, in view of "the manner in which it was used, and the result of its use, . . . the hammer was a deadly weapon").  Indeed, the principle is well established that "[t]he trier of fact may infer malice from the deliberate use of a deadly weapon unless the evidence raises a reasonable doubt whether malice existed."  Elliot v. Commonwealth, 30 Va. App. 430, 436, 517 S.E.2d 271, 274 (1999).

We hold that the evidence was sufficient to establish a prima facie showing of malice.

> [W]hen the Commonwealth makes a prima facie
> showing that malice exists, it thereby
> establishes prima facie that heat of passion

-

> is absent.  In a given situation, the
> accused, without producing evidence, may be
> entitled to an instruction on manslaughter,
> or even to a verdict on that lesser charge,
> if it can reasonably be inferred from the
> Commonwealth's evidence that he acted in the
> heat of passion.  Where the Commonwealth's
> evidence does not permit such an inference,
> however, the burden of production shifts to
> the accused.  [If] . . . he produces some
> credible evidence that he acted in the heat
> of passion, he is entitled to an instruction
> on manslaughter and also, if the evidence as
> a whole raises a reasonable doubt that he
> acted maliciously, to a verdict on the
> lesser charge of homicide.

Hodge v. Commonwealth, 217 Va. 338, 345, 228 S.E.2d 692, 697

(1976).

The salient evidence that Tratzinski relies upon to support

his claim of heat of passion is his testimony that Johnson

confronted him with a hammer and then initiated an attack by

swinging the hammer at him.  Tratzinski testified that he feared

for his life, attempted to deflect the hammer, and fought

Johnson for control of the hammer.  After gaining control of the

hammer, he killed Johnson in a struggle.

The evidence is not inconsistent with Tratzinski's

testimony that Johnson came to his home voluntarily to engage in

a sexual encounter with Tratzinski and that Johnson voluntarily

disrobed.  In his "role of judging witness credibility,"

however, the trial judge was "entitled to disbelieve the

self-serving testimony" of Tratzinski about the events that

followed.  Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500

-

S.E.2d 233, 235 (1998).  Tratzinski's version of events that led to the brutal killing is a matter that rested solely upon the credit the trial judge determined to give to his testimony.  No other evidence in the record supports Tratzinski's testimony of a provocation that justified his brutal response.  Although Tratzinski was injured in the course of the event, those injuries are not inconsistent with an unprovoked killing.

Moreover, the trial judge had to weigh Tratzinski's testimony that he remembered nothing after the struggle against the evidence that indicates Tratzinski attempted to conceal his participation in the killing by hiding Johnson's body in another location.  In addition, proof that cocaine was found on the couch on the patio and inside a bloody towel in the attic was evidence from which the trial judge could conclude that other circumstances existed beyond Tratzinski's explanation.  The weapon also was not evidenced to support Tratzinski's claim.  In short, the trial judge had "the right to reject that part of the evidence believed . . . to be untrue and to accept that found . . . to be true."  Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958).  Because the trial judge was not required to accept Tratzinski's version of the killing, we hold that the evidence did not raise a reasonable doubt about the existence of malice.

"The authorities are replete with definitions of malice, but a common theme running through them is a requirement that a

-

wrongful act be done 'wilfully or purposefully.'" Essex v.

Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984)

(citation omitted). Tratzinski admitted to the police that he

beat Johnson. The evidence proved his assault on Johnson was

vicious and brutal. Although he said Johnson attempted to

assault him, no evidence beyond Tratzinski's testimony supports

his version of the events. In view of all the circumstances,

the trial judge could find beyond a reasonable doubt that the

killing was malicious. "Malice excludes passion." Belton, 200

Va. at 10, 104 S.E.2d at 5. Thus, the evidence was sufficient

to sustain a finding beyond a reasonable doubt of second degree

murder.

### III.

Tratzinski contends the evidence proved he acted in

self-defense. We agree with the Commonwealth that the record

does not contain adequate evidence of self-defense to raise a

reasonable doubt about his guilt.

"Self-defense is an affirmative defense which the accused

must prove by introducing sufficient evidence to raise a

reasonable doubt about his guilt. Whether an accused proves

circumstances sufficient to create a reasonable doubt that he

acted in self-defense is a question of fact." Smith v.

Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993)

(citations omitted).

-

Tratzinski's testimony alone supports his self-defense argument.  The trial judge disbelieved his testimony and could conclude that other evidence did not suggest Johnson actually attacked him.  Thus, absent any credible evidence that created a reasonable doubt, the evidence was sufficient to support the conviction of second degree murder.

Accordingly, we affirm the conviction.

<u>Affirmed</u>.